**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **THE UNITED STATES OF AMERICA**, | ) **Criminal Action No. 2010-009** |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **STEPHEN GARVEY,** | ) |
| **ORLANDO CARINO, and** | ) |
| **CHRISTOPHER JACOBS,** | ) |
| | ) |
| Defendants. | ) |
| ——————————————————————— | ) |

**ATTORNEYS:**

**ALPHONSO A. ANDREWS, AUSA**
**EVAN RIKHYE, AUSA**
St. Croix, U.S. Virgin Islands,
    *For the United States of America*

**MARTIAL A. WEBSTER, ESQ.**
Law Offices of Martial A. Webster, Sr.
St. Croix, U.S. Virgin Islands,
    *For Defendant Garvey*

**KYE WALKER, ESQ.**
The Walker Legal Group
St. Croix, U.S. Virgin Islands
    *For Defendant Carino*

**YOHANA M. MANNING, ESQ.**
Manning Legal Services
St. Croix, U.S. Virgin Islands
    *For Defendant Jacobs*

**<u>MEMORANDUM OPINION</u>**

FINCH, Senior Judge.

    THIS MATTER comes before the Court on posttrial motions by Defendants Stephen

Garvey, Orlando Carino, and Christopher Jacobs seeking judgment of acquittal, or in the

alternative, a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33.[1]  (*See* ECF

Nos. 351, 361, 362.)  Orlando Carino also seeks, in the alternative, to arrest judgment pursuant to

Federal Rule of Criminal Procedure 34.  The United States of America (the "Government")

opposes the Defendants' motions.  (*See* ECF Nos. 371, 372, 373.)  For the reasons set forth

below, the motions *sub judice* shall be denied.[2]


## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

On January 30, 2009, the Federal Bureau of Investigation ("FBI") received an

anonymous tip about a package containing drugs being mailed from El Paso, Texas to St. Croix.

FBI Agent Thomas Drummond ("Agent Drummond") contacted Drug Enforcement

Administration ("DEA") Agent James Semrick ("Agent Semrick") about the package.  Agent

Semrick contacted United States Postal Service ("USPS") Inspector Steven Stebbins ("Inspector

Stebbins") in an attempt to have the package stopped in Puerto Rico, and to then arrange a

controlled delivery in St. Croix.  Inspector Stebbins was unable to stop the package.  Agent

Semrick tracked the package through the USPS and found that it was scheduled to be delivered

on January 31, 2009 to Mr. Luis Castillo ("Castillo") at Mailboxes 'N More located at Estate

---

[1]    This Court has jurisdiction pursuant to 18 U.S.C. § 3231.  *See* 48 U.S.C. § 1612(a) (stating that the District Court of the Virgin Islands "shall have the jurisdiction of a District Court of the United States").

[2]    The instant posttrial motions arise out of the same facts and can be judiciously addressed in a joint opinion.  *See generally United States v. Vallone*, No. 04 CR 372, 2008 WL 4877008 (N.D.Ill. Aug. 11, 2008) (addressing defendants' posttrial motions in a joint opinion).

[3]    After a conviction predicated on a jury verdict, the Court sets forth the evidence in the light most favorable to the Government.  *See United States v. Hoffecker*, 530 F.3d 137, 146 (3d Cir. 2008); *United States v. Wood*, 486 F.3d 781, 783 (3d Cir. 2007).

Diamond Ruby, Suite 7 in Christiansted, St. Croix, U.S. Virgin Islands. Agent Semrick, along with other agents, established surveillance of Mailboxes 'N More.

This case arose out of five (5) related events each involving a specified quantity of marijuana: (1) the mailing of six (6) packages of marijuana (60 pounds) from El Paso to Atlanta between 2008 and 2009; (2) the mailing of 25 pounds of marijuana from El Paso to St. Croix on or about January 31, 2009; (3) the agreement to purchase of 10 pounds of marijuana from El Paso for $1,800.00 on or about September 14, 2009; (4) the agreement to purchase marijuana (200 pounds) from El Paso to St. Croix on or about October 2, 2009; and (5) the mailing of 10 pounds of marijuana from Dallas, Texas to St. Croix on or about November 4, 2009.

An eight-count Second Superseding Indictment (the "Indictment") dated October 21, 2010, charged Stephen Garvey a/k/a "Bigga", Malik Garvey, Orlando Carino ("Carino" a/k/a "Lando"), Daren Henry ("Henry"), Christopher Jacobs ("Jacobs" a/k/a "Kimo" or "B"), and Alphonso Garvey as follows:[4]

| COUNT | OFFENSE | DEFENDANT |
|---|---|---|
| 1 | Conspiracy to Distribute Marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) | Stephen Garvey Malik Garvey Orlando Carino Daren Henry Christopher Jacobs Alphonso Garvey |
| 2 | Possession of Firearm During Drug Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) | Orlando Carino |

---

[4]     Insofar as there are three individuals with the Garvey surname, the Court may, in some instances, refer to the Garveys by their first names. This is done solely for the sake of clarity and is not intended to accord any lesser degree of respect to any individual involved in this matter.

| | | |
|---|---|---|
| 3 | Possession of Firearm During Drug Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) | Stephen Garvey |
| 4 | Possession of Marijuana with Intent in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 18 U.S.C. § 2 | Stephen Garvey Daren Henry Orlando Carino |
| 5 | Possession of Unlicensed Firearm in violation of 14 V.I.C. § 2253(a) | Orlando Carino |
| 6 | Use of Telephone Facility in violation of 21 U.S.C. § 843(b) | Alphonso Garvey |
| 7 | Use of Telephone Facility in violation of 21 U.S.C. § 843(b) | Malik Garvey |
| 8 | Possession of Marijuana with Intent in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(D) | Stephen Garvey |

(*See* Indictment, ECF No. 219.)

As to Count 1, the Indictment sets out five overt acts in furtherance of the conspiracy. Overt Acts Category No. 1 alleges that during unknown dates in 2008 and 2009, an individual now cooperating with the Government sent at least six parcels of marijuana from El Paso, Texas, through Jacobs in Atlanta, Georgia, to defendant Stephen Garvey in St. Croix. Each of these six parcels weighed at least 10 pounds.

Overt Acts Category No. 2 alleged that on or about January 31, 2009, Stephen Garvey sent Carino to Mailboxes 'N More in Sunny Isle to pick up a parcel containing 25 pounds of marijuana. This parcel had been mailed from El Paso, Texas. It was addressed to a fictitious person and listed the Mailboxes 'N More store in Sunny Isles as the delivery address. Henry, the owner of Mail Boxes 'N More, facilitated the delivery by coordinating with Stephen to ensure

that Carino picked-up the parcel, knowing that it contained marijuana.

Overt Acts Category No. 3 alleged that on or about September 9, 2009, Stephen Garvey and Jacobs sent $1,800 to an El Paso, Texas individual, who is now cooperating with the Government, for the purposes of purchasing 10 pounds of marijuana. The $1,800 was for the purchase of five of the ten pounds of marijuana. The other five pounds of marijuana were "fronted," that is, would be paid for later from the sale of the marijuana itself.

Overt Acts Category No. 4 alleged that on or about October 2, 2009, Stephen Garvey spoke with a DEA agent, who was acting in an undercover capacity, in order to negotiate the purchase of 200 pounds of marijuana. Stephen agreed to pay approximately $325.00 per pound for 200 pounds. Stephen believed that he was dealing with a Texas-based marijuana trafficker who would be able to ship the marijuana from El Paso, Texas to St. Croix.

Overt Acts Category No. 5 alleged that on or about November 4, 2009, Malik Garvey shipped a package with 10 pounds of marijuana from Dallas to Stephen Garvey in St. Croix. Although Stephen was the intended recipient, the parcel was addressed to another person. Alphonso Garvey was given instructions by Stephen on when, where, and how to take control of the package. The package was intercepted by law enforcement authorities before Alphonso could take control of it.

As a result of dismissals and severances, only three (3) defendants, Stephen Garvey, Orlando Carino and Christopher Jacobs (hereinafter collectively the "Defendants") were tried on January 10, 2011 on the following counts:

| COUNT | OFFENSE | DEFENDANT |
|---|---|---|
| 1 | Conspiracy to Distribute Marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) | Stephen Garvey Orlando Carino Christopher Jacobs |
| 2 | Possession of Firearm During Drug Crime in violation of 18 U.S.C.§ 924(c)(1)(A)(i) | Orlando Carino |
| 4 | Possession of Marijuana with Intent in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 18 U.S.C. § 2 | Stephen Garvey Orlando Carino |
| 5 | Possession of Unlicensed Firearm in violation of 14 V.I.C. § 2253(a) | Orlando Carino |
| 8 | Possession of Marijuana with Intent in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(D) | Stephen Garvey |

At the close of the Government's case-in-chief, the Defendants argued their motions pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). (*See* Trial Tr. Vol. VII, ECF. No. 336.) Thereafter, the Court dismissed Counts 1, 2, and 4 as against Carino, and Count 8 as against Garvey. (*Id.* at 70.) As such, the following counts were presented to the jury for deliberation:

| COUNT | OFFENSE | DEFENDANT |
|---|---|---|
| 1 | Conspiracy to Distribute Marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) | Stephen Garvey Christopher Jacobs |
| 4 | Possession of Marijuana with Intent in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 18 U.S.C. § 2 | Stephen Garvey |
| 5 | Possession of Unlicensed Firearm | Orlando Carino |

in violation of 14 V.I.C. § 2253(a)

The jury convicted the Defendants on all counts. (*See* Verdict Form, ECF Nos. 318, 319, 320.) Stephen Garvey and Christopher Jacobs were found guilty of conspiracy on Count 1, and the jury attributed 305 pounds of marijuana to each co-defendant on this Count. Stephen Garvey was also found guilty of possession with intent to distribute marijuana, Count 4. Orlando Carino was found guilty of possession of an unlicensed firearm under Virgin Islands law, Count 5.

## II.     DISCUSSION

In the context of criminal conviction, due process requires proof of guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 316-17 (1979); *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *In re Winship*, 397 U.S. 358, 361-64 (1970).

### A.  **Rule 29 Motions for Judgment of Acquittal**

A motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure may only be granted where the evidence is insufficient to sustain a conviction. *See United States v. Bobb,* 471 F.3d 491, 494 (3d Cir. 2006); *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d Cir. 1990). In deciding such a motion, the district court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Claxton*, 685 F.3d 300, 305 (3d Cir. 2012); *United States v. Brodie*, 403 F.3d 133, 262 (3d Cir. 2005); *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001); *see also United States*

*v. Gambone,* 314 F.3d 163, 169-70 (3d Cir. 2003). Indeed, the jury verdict will stand if there is substantial evidence, either direct or circumstantial, to support the conviction. *Id.* at 169-70 (citations omitted); *see also United States v. Cohen,* 455 F. Supp. 843, 852 (E.D.Pa. July 18, 1978), *aff'd,* 594 F.2d 855 (3d Cir. 1979).

On a motion for judgment of acquittal, a defendant cannot prevail by raising questions as to the weight of the evidence or the credibility of the witnesses. *See United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008) ("[I]t is not for us to weigh the evidence or to determine the credibility of witnesses."); *Brodie*, 403 F.3d at 133 (noting that "[c]ourts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury"); *Cohen,* 455 F. Supp. at 852 (iterating that in "determining a Rule 29 motion, questions of the weight of the evidence or of the credibility of the witnesses are foreclosed by the jury's verdict"). Thus, a finding that a jury verdict is insufficient as a matter of law should be "confined to cases where the prosecution's failure is clear." *See United States v. Smith,* 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Leon,* 739 F.2d 885, 891 (3d Cir. 1984)).

**1. Count 1 (Conspiracy): Stephen Garvey and Christopher Jacobs**

The U.S. Supreme Court describes the essence of a conspiracy as:

"[T]he combination of minds in an unlawful purpose." To convict a defendant of narcotics . . . conspiracy, the Government must prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy). . . . Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law "through every moment of [the

conspiracy's] existence," and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot.

*Smith v. United States,* --- U.S. ----, 133 S.Ct. 714, 719 (2013) (internal citations omitted).

### a. **Defendants' Garvey and Jacobs's Assertions**

The gravamen of Stephen Garvey's (hereinafter "Garvey") Rule 29 motion for judgment of acquittal, or, in the alternative, a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33") is that the evidence was insufficient for the jury to find him guilty of conspiracy to possess with intent to distribute 305 pounds of marijuana, and of possession of 25 pounds of marijuana. Garvey argues: (1) that from approximately 2,500 telephone intercepts, the Government found less than one percent to be pertinent; (2) that none of the calls or any of the evidence shows an agreement between all the defendants; (3) that the Government can point to nothing in the record to show that Garvey had any agreement with Carino, Henry, or that Garvey was related to the shipment or receipt of marijuana; (4) that there is no evidence that Jacobs shipped any drugs from Atlanta to Stephen in St. Croix as alleged in Overt Act Category 1; and (5) that the Government could not prove any of the allegations in the Indictment. The Government argues that there was sufficient evidence for the jury to find Garvey guilty of conspiracy (Count 1) beyond a reasonable doubt.

The gravamen of Jacobs's motion for judgment of acquittal is that the Government failed to produce sufficient evidence to attribute 305 pounds to Jacobs beyond a reasonable doubt. (*See* Mot. for J. of Acquittal, ECF No. 361.) Jacobs argues that the evidence at trial is only sufficient to sustain a finding of guilt as to twenty five pounds, which is a lesser included offense. More specifically, Jacobs argues that there was insufficient evidence to find him guilty beyond a

reasonable doubt as to the 60 pounds of marijuana (six parcels, each weighing 10 pounds) mailed from El Paso, Texas by a cooperating witness, through Jacobs in Atlanta, and then to Garvey in St. Croix. Those 60 pounds were attributed to Garvey in Overt Acts Category No. 1.

Jacobs also argues that the object of the conspiracy, as stated in the Indictment, was that the "conspirators obtained marijuana that originated in the Mainland United States and then imported it into the Virgin Islands for sale and distribution." (*Indictment* at 2, ECF No. 1.) Therefore, Jacobs argues that in order for the purported 60 pounds of marijuana to be part of the object of this conspiracy, it would have had to travel to the Virgin Islands. However, Jacobs contends that the Government offered no evidence, direct or circumstantial, that these shipments ever went to the Virgin Islands, and the Government didn't present anyone besides the confidential source, Abraham Licon ("Licon"), and Jacobs who had knowledge of the shipments. Jacobs argues that the reasonable inference to be drawn here is that if he (Jacobs) wanted marijuana sent to St. Croix, Licon would send it directly to St. Croix for him. Garvey argues that there is no evidence that Jacobs shipped any drugs from Atlanta to him (Garvey) in St. Croix as alleged in Overt Acts Category No. 1.

There is no issue as to Overt Acts Category No. 2. Jacobs concedes, solely for the purposes of the motion *sub judice*, that the evidence was sufficient to sustain a finding of 25 pounds of marijuana as to this act.

Overt Acts Category No. 3 alleged that Garvey and Jacobs sent a payment of $1,800 to Licon for the purchase of five of the ten pounds of marijuana. Jacobs argues, however, that there was insufficient evidence to attribute the marijuana on this Overt Act No. 3 to him, because there

was no evidence presented at trial to suggest that Garvey had anything to do with the negotiations for payment of 5 pounds of marijuana to be shipped from El Paso to Atlanta. Jacobs argues that the deal was for him to procure five pounds of marijuana from undercover DEA Agent Omar Chavarria ("Agent Chavarria"). Agent Chavarria attempted to "front" five additional pounds to Jacobs. (*See* Trial Tr. Vol. IV at 184, ECF No. 333.) Therefore, Jacobs contends that because the agreement to purchase and ship 5-10 pounds of marijuana was between himself, Agent Chavarria, and/or a confidential source (Licon), and there is no evidence that the intended destination of the marijuana was the Virgin Islands, there was insufficient evidence to prove Overt Acts Category No. 3.

Jacobs argues that there was insufficient evidence to prove Overt Acts Category No. 4 which attributes 200 pounds of marijuana to him. However, Jacobs argues that on or about October 2, 2009, Garvey attempted to deal directly with the undercover DEA agent and "cut Jacobs, the person who referred Garvey to them out" of the deal to purchase 200 pounds of marijuana at approximately $325.00 per pound. (Mot. for J. of Acquittal at 7, ECF No. 361; *see also* Trial Tr. Vol. V at 14-16, 27, 60-61, 80, ECF No. 334.) Jacobs met with an undercover DEA agent on or about October 15, 2009 to negotiate the purchase of marijuana. Ultimately, the negotiations to purchase the 200 pounds of marijuana never went through. (*Id.*)

As to Overt Acts Category No. 5, Jacobs argues that there was insufficient evidence to attribute 10 pounds of marijuana shipped on November 4, 2009 from Malik Garvey in Dallas to Alphonso Garvey in the Virgin Islands, because there was no evidence that Jacobs, who lived in Atlanta, Georgia, knew of, or participated in this transaction.

The Government argues that there was sufficient evidence presented for the jury to convict Garvey and Jacobs of conspiracy to possess 305 pounds of marijuana. The Government further argues that in proving the elements of the conspiracy: (1) the Government need not prove that each defendant knew all details or goals of the conspiracy or the identity of all participants; and (2) the Government need not prove that Jacobs committed any overt act in furtherance of the conspiracy, because the essence of a conspiracy is the agreement to commit the unlawful act which can be punished whether or not the substantive crime ensues. (*See* Gov't Opp'n to Garvey's Rule 29, ECF No. 371 at 13-14; Gov't Opp'n to Jacobs's Rule 29, ECF No. 373 at 13.) Thus, the Government argues that Garvey and Jacobs's conduct was part of, and facilitated, the overall conspiracy to possess and distribute marijuana.

### b. **Count 1 (Conspiracy): Analysis**

"The essential elements of a drug distribution conspiracy under 21 U.S.C. § 846 are: '(1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work together toward the goal, which the [defendant] knowingly joined.'" *Claxton,* 685 F.3d at 305 (quoting *United States v. Boria,* 592 F.3d 476, 481 (3d Cir. 2010); *see United States v. Pressler,* 256 F.3d 144, 147 (3d Cir. 2001) (same). The elements of *conspiracy* can be proven entirely by circumstantial evidence. *Brodie,* 403 F.3d at 134 (citing *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir.), *cert. denied*, 475 U.S. 1024 (1986)). However, the Court must:

> [G]ive close scrutiny to the sufficiency of the government's evidence in a conspiracy case for the reasons that slight evidence of a defendant's connection with a conspiracy is insufficient to support a guilty verdict and guilt must remain personal and individual. Conspiracy cannot be proven by piling inference upon

inference where those inferences do not logically support the ultimate finding of guilt.

In conducting the sufficiency inquiry, we do not view the government's evidence in isolation, but rather, in conjunction and as a whole. The Court must determine whether all the pieces of evidence, taken together, make a strong enough case to let a jury find [the defendant] guilty beyond a reasonable doubt.

*Brodie*, 403 F.3d at 134 (internal quotation marks and citation omitted).

The elements of the substantive offense of possession of a controlled substance with intent to distribute are that the defendant: (1) knowingly possessed a controlled substance with (2) the intent to distribute it. *United States v. Iglesias,* 535 F.3d 150, 156 (3d Cir. 2008). "When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone." *United States v. Rodriguez,* 961 F.2d 1089, 1092 (3d Cir. 1992) (citation omitted). The jury is required to find the drug type and quantity as to the conspiracy as a whole, not on a defendant-specific determination. *United States v. Phillips*, 349 F.3d 138, 142-43 (3d Cir. 2003) (overruled on other grounds).

Jacobs and Licon met when Licon worked at a speed shop in El Paso and were friends for approximately ten years. (Trial Tr. Vol. V at 68-69, ECF No. 334.) In late 2008, Licon started shipping 10-pound packages of marijuana from El Paso to Jacobs in Atlanta. (*Id.* at 68-70.) Jacobs paid Licon for the packages. As to the mailing of six (6) packages of marijuana (60 pounds) from El Paso to Atlanta between 2008 and 2009, Jacobs argues that there was no evidence that those drugs were destined, or ever made it, to St. Croix; no evidence that this event occurred between El Paso and Atlanta; and no evidence that he was involved in a conspiracy.

During this time, Licon was not acting in an undercover capacity with DEA and thus was a co-conspirator of Jacobs. Both Jacobs and Licon agreed that Licon would secure marijuana in

El Paso, ship it to Atlanta, and be paid by Jacobs. The evidence at trial showed that Jacobs and Licon shared a unified purpose, and agreed to work together to achieve the same goal.

Indeed, Jacobs's conduct falls within the charged conspiracy. Count 1 of the Indictment charges that "within the United States Virgin Islands and elsewhere, Stephen Garvey . . . [and] Christopher Jacobs . . . did knowingly and intentionally combine, conspire . . . among themselves and with other persons . . . to traffic in marijuana substances, including possession with intent to distribute and the actual distribution . . . marijuana". (Indictment at 1-2, ECF No. 1 (upper case emphasis removed).) The Government alleged, and presented evidence in support thereof, that the purpose to the conspiracy was to deal in marijuana. The geographic destination was St. Croix, but with activities in El Paso, Dallas, and Atlanta.

In a conspiracy charged under 21 U.S.C. § 846, the government is not required to prove an overt acts in furtherance of the conspiracy. *See United States v. Shabani*, 513 U.S. 10, 11 (1994); *see also United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) (noting that it is neither an element of 21 U.S.C. § 846 nor a constitutional requirement that a defendant have committed an overt act in furtherance of the conspiracy); *Kapp*, 781 F.2d at 1012 ("The government is not required either to prove all the overt acts to a conspiracy or all the facts supporting the overt act. It is sufficient that the government prove a single overt act in furtherance of the conspiracy.") (citation omitted). Therefore, proof that every overt act is not required. The Court also notes that Jacobs and Garvey's intent to distribute is evident from the large quantity of marijuana and frequency of the sales (i.e., six times).

The evidence at trial also showed that Garvey, Jacobs, and Licon participated with a unified purpose to achieve a common goal in the mailing of marijuana (25 pounds) from El Paso to St. Croix on or about January 31, 2009. (*See id*. Vol. V at 71, 98, ECF No. 334.) Licon testified that, in late January 2009, he and Jacobs wrapped a 25-pound package of marijuana in two (2) five-pound Home Depot buckets. (*Id*. at 72.) Licon mailed the package to St. Croix and gave the tracking number to Jacobs. (*Id*. at 73.) The package was tracked by Garvey and retrieved by Carino. As previously noted, Jacobs concedes his involvement in the conspiracy with respect to this event. (*See* Jacobs's Mot. for J. of Acquittal at 5, ECF No. 361.) The record also shows that Garvey was directly involved in negotiating the purchase of marijuana and the shipment to St. Croix.

As to the ten pounds of marijuana in Overt Acts Category 3, Jacobs argues that there is no evidence that those drugs were destined, or ever made it to St. Croix. The evidence at trial shows that on September 14, 2009 Jacobs agreed to purchase 10 pounds of marijuana at a cost of $1,800 from Licon, who was then acting as an undercover agent. Jacobs sent Licon the $1,800 payment. The marijuana was never sent to Jacobs. Jacobs asserts that the evidence was insufficient to establish that he acted with a co-conspirator concerning this event.

As to Jacobs's agreement to purchase marijuana for $1,800 on September 14, 2009, it is true that no specific co-conspirator was identified in this event. Nonetheless, evidence of the other events shows that Jacobs and Garvey were acting in concert. Agent Chavarria testified that Jacobs and Garvey were business associates. (*See* Trial Tr. Vol. IV at 174-76, ECF No. 333.) In fact, subsequent to this September 2009 event, both Jacobs and Garvey arranged for a 200-pound

shipment of marijuana to St. Croix. Again, Jacobs's conduct falls within the charged conspiracy, because Indictment charges that "within the United States Virgin Islands and elsewhere, Stephen Garvey . . . [and] Christopher Jacobs . . . did knowingly and intentionally combine, conspire . . . to traffic in marijuana substances . . . ." (Indictment at 1-2, ECF No. 1 (upper case emphasis removed).) In light of the evidence presented, the Court finds that the evidence was sufficient for a jury to reasonably conclude that Jacobs and Garvey conspired, with known or some unknown person(s), to obtain the ten pounds of marijuana to later distribute it.

Regarding the fourth event giving rise to the conspiracy here, namely the agreement to purchase marijuana (200 pounds) from El Paso to St. Croix October 2, 2009, a jury could reasonably conclude that Jacobs and Garvey acquired the 200 pounds of marijuana for distribution in St. Croix. They negotiated the deal Agent Chavarria, a fact established by recorded conversations admitted at trial. Jacobs discussed the purchase of five and then 60 pounds of marijuana, and agreed to transport the "papers" (i.e., cash payment) to El Paso. (*See* Gov't Ex. 40-520034; Trial Tr. Vol. IV at 183-86, ECF No. 333; Gov't Ex. 40-520044, Trial Tr. Vol. V at 7-9, ECF No. 334.) Jacobs told Agent Chavarria that he (Jacobs) could sell the marijuana for $1,800 per pound in St. Croix. (*See* Trial Tr. Vol. IV at 186, ECF No. 333.) Garvey agreed to give Agent Chavarria different addresses to ship 60 pounds of marijuana. (*See* Gov't Ex. 40-520044; Trial Tr. Vol. V at 7-8, ECF No. 334.) Garvey asked Agent Chavarria if he had a lot (of marijuana) and informed Agent Chavarria that "we're looking for about two hundred" pounds. (*See* Gov't Ex. 40-520050; Trial Tr. Vol. V at 9, ECF No. 334.) Garvey told Agent Chavarria he bought Jacobs's ticket and would send him to El Paso. (*See* Gov't Ex. 40-

520059; Trial Tr. Vol. V at 13-14, 18-21, ECF No. 334.)  Garvey explained to Agent Chavarria that once the marijuana was in Miami he would transport it to St. Croix.  (*See* Gov't Ex. 40-520062; Trial Tr. Vol. V at 23, ECF No. 334.)  Garvey agreed to send Agent Chavarria money orders, instead of cash, to pay for the marijuana.  (*See* Gov't Ex. 40-520061; Trial Tr. Vol. V at 21-22, ECF No. 334.)  This evidence is contrary to Jacobs's assertion that he did not participate in the agreement to purchase marijuana (200 pounds) from El Paso to St. Croix October 2, 2009.

Indeed, the evidence supports a finding beyond a reasonable doubt that Jacobs was an important link that in connecting Agent Chavarria with Garvey.  Jacobs and Garvey's participation in the unified scheme is also supported by Garvey's purchase of Jacobs' ticket to travel to El Paso for the drugs.  Jacobs also alleges that there was no deal because the October 15, 2009 deal fell through.  However, the deal only fell through temporarily.  In fact, Jacobs contacted Garvey by cellular phone that same day and they agreed to purchase the 200 pounds of marijuana at $310.00 per pound.  (*See* Trial Tr. Vol. V at 25-27, ECF No. 334.)  Jacobs also had the money orders to pay for the purchase. (*See id.* at 53.)

Garvey was the intended recipient of the package mailed from Dallas to St. Croix by Malik on or about November 4, 2009.  The package contained ten pounds of marijuana, but it was addressed to a fictitious person.  Garvey gave Alphonso instructions regarding taking control of the ten pounds of marijuana shipped by Malik from Dallas.  Monitored calls of two telephones possessed by Garvey revealed the following conversations relative to the package, (Trial Tr. Vol. VI at 64-65, 74, 79, 90, 92, ECF No. 335): (1) Garvey told David Roldan ("Roldan") that the package addressed to Roldan was going to be coming in a couple of days. (2) Roldan told

Garvey that the postal van came, but did not bring the package addressed to 354 Peter's Rest. (3) Number 354 Peter's rest is an address associated with Garvey, because it is used on the registration for his pickup truck. (4) Garvey called the USPS to inquire about the package and told them he was Roldan. (5) Garvey called the USPS and gave them the tracking number for the package. That tracking number was the same number affixed to a package that Inspector Stebbins had seized from the flow of mail that day. When agents opened the package, it contained 10 pounds of marijuana.

The evidence supports a reasonable conclusion that Garvey and Jacobs agreed to purchase 200 pounds of marijuana from El Paso to be sent to St. Croix for distribution. Moreover, as previously noted, the distribution intent is inferred from the quantity of drugs. The evidence further supports a reasonable conclusion that Garvey arranged for a 10-pound shipment of marijuana from Texas to St. Croix and attempted unsuccessfully to possess it for later distribution. As to this event, the Government conceded the absence of any evidence directly linking Jacobs.

Here, there was "a logical and convincing connection" between the facts established and the conclusions inferred by the jury. *See United States v. Idowu,* 157 F.3d 265, 269 (3d Cir. 1998). The essence of any conspiracy is the agreement. *Pressler,* 256 F.3d at 147. Since agreements to commit crimes are clandestine by nature, direct evidence of conspiracies is rare. *Id.* For the reasons stated, the jury had sufficient evidence to find beyond a reasonable doubt that: a conspiracy existed; Jacobs and Garvey were involved in that conspiracy; the drug was marijuana; and the drug quantity involved in the conspiracy as a whole was more than 100

kilograms (220 pounds) of cocaine, specifically 305 pounds.  (*See* Verdict Form, ECF Nos. 318, 320.)   Once the jury makes these findings, it is for the sentencing judge to determine by a preponderance of the evidence the drug quantity attributable to each defendant and sentence him or her accordingly, provided that the sentence does not exceed the applicable statutory maximum.  *Phillips*, 349 F.3d at 142-43.  The Court finds no basis upon which to grant the Rule 29 motion for judgment of acquittal as to Garvey on Count 1.   Likewise, as to Christopher Jacobs, the Court finds no basis upon which to grant his Rule 29 motion for judgment of acquittal on Count 1.

### 2.   <u>Count 4 (Possession with Intent to Distribute): Stephen Garvey</u>

Garvey was charged in Count 4 of the Indictment with possession with intent to distribute less than 50 kilograms (25 pounds) of marijuana with Henry, the owner of Mailboxes 'N More, and Carino in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.  Garvey argues that the Government presented to evidence that he had any agreement with Carino or Henry related to the shipment or receipt of marijuana.  The Government argues that it met its burden of proof.

At about 11:30 A.M. on January 31, 2009, Agent Semrick's team observed Henry conversing with defendant Garvey outside Mailboxes 'N More.  (Trial Tr. Vol. II at 77, ECF No. 331; Vol. IV at 62, ECF No. 333.)  Henry testified that Garvey told him he was expecting a package for his (Garvey's) uncle.  (*Id.* Vol. IV at 70, ECF No. 333.) Garvey gave Henry the tracking number for the package.  (*Id.* Vol. IV at 71.)  Garvey asked to be notified when the package arrived.  (*Id.* Vol. IV at 70.)  Mailboxes 'N More identified the package by the tracking

number, and notified Garvey, by phone, that the package had arrived. (*Id.* Vol. IV at 74.) Garvey stated that he would send "Lando", who Henry knew to be Carino, to pick up the package. (*Id.* Vol. IV at 75.) Carino arrived at Mailboxes 'N More at about 1:00 P.M., driving his Honda CRV, picked up the package, and placed it in the rear cargo area of his vehicle. (*Id.* Vol. IV at 76, 123.) Agent Semrick followed and stopped Carino's vehicle. (*Id.* Vol. II at 78-82, ECF No. 331.) The vehicle stop occurred approximately two (2) hours after Garvey was observed at Mailboxes 'N More. (*Id.* Vol. III at 107-108, ECF No. 332.) Carino consented to having the box opened, and it was discovered to contain a combined weight of 25.9 pounds of marijuana. (*Id.* Vol. II at 93-94, ECF No. 331; Vol. III at 17, 23-24, ECF No. 332; Vol. IV at 129, 134, 165, ECF No. 333.) Inspector Stebbins testified that Garvey and his wife were the subscribers of the internet protocol ("IP") address tracking the package containing marijuana, which was picked up by Carino. (*Id.* Vol. III at 73-74, 77-78.)

The Court has reviewed the record in the light most favorable to the Government to determine whether any rational trier of fact could have found proof of Garvey guilt beyond a reasonable doubt based on the evidence as to Count 4. The Court finds that a reasonable jury could, indeed, have found Garvey guilty as to Count 4. Accordingly, Garvey's Rule 29 motion on Count 4 shall be denied.

### 3. Count 5 (Possession of an Unlicensed Firearm): Orlando Carino

Carino, under surveillance by DEA and High Intensity Drug Trafficking Area ("HIDTA") Task Force agents (collectively, the "agents") on January 31, 2009, was observed as

he arrived at Mailboxes 'N More and departed with a large box, which he had placed in the rear cargo area of his vehicle. (Trial Tr. Vol. IV at 123, ECF No. 333.) Agent Semrick conducted a vehicle stop, ordered Carino out of his car, and questioned him regarding the box. (*Id.* at 124.) Carino told the agents that he picked up the box for Garvey. Agent Semrick requested and received Carino's consent to look at the package. Agent Semrick then verified that the tracking number and addressee on the package matched the information Agent Drummond and Inspector Stebbins had provided earlier. Licon identified the label on the package as the one he filled out in late January and mailed to Castillo (a fictitious person) on St. Croix. With Carino's consent, Agent Semrick opened the box and discovered two (2) sealed 5-gallon buckets containing approximately 25.9 pounds of marijuana combined, and wrapped in El Paso newspaper. (*Id.* Vol. III at 124; *see also* Vol. II at 93.) When the agents asked Carino whether he had anything else in his vehicle, Carino told them that he had a licensed shotgun in the backseat. (*Id.* Vol. IV at 48, ECF No. 333.) Agent Semrick noticed and removed a loaded 12 gauge shotgun.

The agents arrested Carino and transported him to the DEA/HIDTA office for questioning. A further search of the vehicle revealed a third five-pound, white bucket and smaller jar, which contained marijuana residue. Although Carino was arrested on January 31, 2009 and processed relative to his possession of marijuana and the shotgun, he was released that day because he agreed to cooperate; prosecution was deferred; and there was no court proceeding.

At trial, Virgin Islands Firearm Records revealed that a license was issued to Carino to possess a shotgun for home protection, bearing serial number P573104. (*Id.* Vol. IV at 107-110.) Carino's firearm license expired on September 16, 2008. (*Id.* at 110.)

Carino was found guilty of possession of an unlicensed firearm in violation of V.I. Code Ann. tit. 14, § 2253(a). Carino now argues that this Court committed the following reversible errors: 1) the admission of evidence of the subject firearm's operability; and 2) the admission of prejudicial evidence against Carino.

a. Operability of the Firearm

On January 10, 2011, the day of jury selection, Agent Semrick inserted two live shotgun shells into the shogun found in Carino's vehicle and discharged them. (*Id*. Vol II at 101, Vol. III at 95-96.) In so doing he heard an explosion and found the firearm to be operable. (*Id*. at 97-98.) Carino argues the Court committed reversible error by allowing Agent Semrick's testimony regarding the operability of the firearm, despite Carino's objection. Carino argues that he did not receive notice that the firearm was tested until the first day of testimony, and was prejudiced by this discovery violation. Carino specifically asserts that if he had gotten notice, he would have tested the firearm himself for operability.

The Government argues that Carino's claim lacks merit, because Agent Semrick did not testify as an expert. Rather, Agent Semrick testified as to what he did with the firearm and his perceptions, thereby obviating the need for expert notice, and Agent Semrick did not prepare a report. (Trial Tr. Vol. II at 103-04, ECF No. 331.) Moreover, the Government argues that Carino tested the firearm, so any prejudice that may have existed was cured. (*See* Gov't Opp'n

to Carino's Mot. for Acquittal/New Trial at 10, ECF No. 372.)  As to Carino's second claim of reversible error--evidence depicting marijuana in close proximity to the firearm--the Government argues that the single count submitted to the jury was unauthorized possession of a firearm, and there was overwhelming evidence presented as to the offense in Count 5.

The Virgin Islands Code provides that "[w]hoever, unless otherwise authorized by law . . . possesses . . . either actually or constructively . . . any firearm, as defined in Title 23, section 451(d) of this code" is subject to imprisonment.  14 V.I.C. § 2253(a).  A firearm, as defined by § 451(d), is "any device by whatever name known, capable of discharging ammunition by means of gas generated from an explosive composition, including any air gas or spring gun or any 'BB' pistols or 'BB' guns that have been adapted or modified to discharge projectiles as a firearm."  23 V.I.C. § 451(d).

The Court finds no error in Agent Semrick's testimony as to his knowledge or perception of the operability of the firearm found in Carino's vehicle.  *See, e.g., United States v. Mike,* 655 F.3d 167, 174 (3d Cir. 2011) (rejecting sufficiency challenge where an agent from the Bureau of Alcohol, Tobacco Firearms, and Explosives testified that he test-fired the weapon and concluded that it was operable and would fire in semiautomatic mode); *United States v. Allen,* 235 F.3d 482, 492–93 (10th Cir. 2000) (upholding conviction where agent test-fired weapon with blank ammunition); *United States v. Cox,* 934 F.2d 1114, 1121 (10th Cir. 1991) (rejecting sufficiency challenge where "an Alcohol, Tobacco and Firearms agent testified that the weapons had been test fired, were operable and that, in his opinion, they were firearms as defined by 18 U.S.C. § 921(a)(3)").  In this case, a brief continuance was granted to allow Carino the opportunity to

have the firearm tested, which he did. (Trail Tr. Vol. II at 108-110, ECF No. 331; Vol. III at 94-96, ECF No. 332.) As such, the Court agrees that Carino's independent test of the firearm cured any prejudice that may have existed.

  b.  Other Prejudicial Evidence

As to the second reversible error, Carino asserts that the Court erred in admitting evidence of the empty containers containing marijuana residue, a photograph depicting the firearm in close proximity to the seized marijuana, and testimony that drug traffickers routinely possess firearms in close proximity to drugs. (*See* Carino's Mot. for Acquittal and/or New Trial or to Arrest Judgment at 7, 11, ECF No. 362.)

The elements necessary for conviction of the offense charged in Count 5 are that: 1) Carino possessed the firearm; 2) the firearm was operable; and 3) Carino was not authorized to possess the firearm. *See* 14 V.I.C. § 2253(a). Agent Semrick testified that he observed the firearm in Carino's car behind the driver's seat, within reach. (*See* Trail Tr. Vol. IV at 37-42, ECF No. 333.) Carino also told Agent Semrick that he had a licensed firearm in his car. Therefore, a rational jury could have concluded that Carino had constructive possession of the firearm; it was operable based on Agent Semrick's test; and that Carino's license to possess the firearm bearing serial number P573104 had expired. (*Id.* Vol. III at 95-98, ECF No. 332; Vol. IV at 107-110, ECF No. 333.) These facts alone are sufficient to establish the elements of the offense charged in Count 5. The Court does not find that there was prejudicial evidence

presented that affected the outcome of the trial, and there is no basis upon which to enter a judgment of acquittal as to Carino.

## B.  Rule 33 Motions for a New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir. 2002).  However, the authority to grant a new trial pursuant to Rule 33 is limited to those instances where the Court believes that there is a serious danger that a miscarriage of justice has occurred--that is, that an innocent person has been convicted.  *See United States v. Silveus,* 542 F.3d 993, 1004–05 (3d Cir. 2008) (quoting *Johnson,* 302 F.3d at 150 (internal citation and quotations omitted)); *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). Even in those cases where the court may feel that the verdict is contrary to the weight of the evidence, "[m]otions for a new trial based on the weight of the evidence are not favored" and should be limited to "exceptional cases." *Silveus,* 542 F.3d at 1005 (*quoting Government of Virgin Islands v. Derricks,* 810 F.2d 50, 55 (3d Cir. 1987)).  Yet, if there is a reasonable possibility that a "trial error had a substantial influence on the verdict," a new trial must be granted.  *Government of Virgin Islands v. Bedford,* 671 F.2d 758, 762 (3d Cir. 1982)).

i.      Christopher Jacobs - Rule 33 Motion for New Trial

Jacobs argues, in the alternative, that he is entitled to a new trial because the Government introduced perjured and irrelevant testimony before the Grand Jury. (Jacobs's Mot. for J. of Acquittal at 10.) He asserts that the Government represented to the Grand Jury that evidence existed linking the purported substances to the Virgin Islands, but failed at trial to introduce any such evidence. (*Id.* at 12.) Thus, he argues that his conviction was based on evidence that was irrelevant to the charged conspiracy to obtain marijuana in the mainland and bring it into the Territory. (*Id.*)

Rule 33 states in relevant part that:

(a) Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. . . .

(b) Time to File.

(1) Any motion for new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. . . .

(2) Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period.

Fed. R. Crim. P. 33.

The perjured testimony, Jacobs contends, consists of statements by Agent Semrick that: (1) the six packages (60 pounds) of marijuana travelled from El Paso to Atlanta, then to the Virgin Islands; (2) both Jacobs and Garvey sent $1,800 to El Paso to purchase ten pounds of marijuana; (3) on a telephone call between Jacobs, Garvey, and Agent Chavarria, Garvey expressed his displeasure at losing the $1,800; and (4) the marijuana involved in the conspiracy

was linked to the Virgin Islands. (Jacobs's Mot. for J. of Acquittal at 10-11.) These misrepresentations, Jacobs avers, constitute a miscarriage of justice that warrants a new trial. (*Id*. at 12.)

The Government argues that Jacobs's assertion that he is entitled to a new trial is baseless. Rather than supporting a finding that Agent Semrick committed perjury, the evidence, at best, establishes a "minor inconsistency" between Agent Semrick's testimony before the grand jury and what was presented at trial. (*See* Gov't Opp'n to Jacobs's Mot. for Acquittal/New Trial at 20, ECF No. 373.) More specifically, the Government argues that: (1) Agent Semrick testified consistent with his understanding of what Licon told DEA agents in El Paso, therefore, he did not commit perjury; and (2) Jacobs had an opportunity to impeach Agent Semrick and Licon with this inconsistent information, but he failed to do so. (*See id.* at 20-21.) Thus, the Government contends that, taken as a whole, the evidence submitted to the grand jury supported the charges in the indictment, and the evidence introduced at trial supports the verdict of the petit jury.

Jacobs's motion for new trial is not grounded on newly discovered evidence, but, rather, a challenge is to witness statements before the grand jury which ultimately resulted in an indictment. The Court notes that:

> An indictment cannot be based on perjured testimony, and the government may not use perjured testimony at trial if there is a reasonable chance that it would affect the jury's judgment. Testimony shown to be inconsistent with prior statements is not necessarily perjury, however, and not every contradiction is material.

*United States v. Vallie*, 284 F.3d 917, 921 (8th Cir. 2002) (internal citation omitted).  Licon has

also not established that these witnesses perjured themselves.  Moreover, both Agent Semrick

and Licon took the stand at trial, and Licon's counsel had an opportunity to impeach their

testimony as allowed by Federal Rule of Evidence 801(d).[5]  (*See* Trial Tr. Vol. IV at 55-59, ECF

No. 333; Vol. V at 90-108, ECF No. 334; Vol VI at 114, ECF No. 335.)  The Court should grant

Jacobs's motion for new trial only if "there is a serious danger that a miscarriage of justice has

occurred." *United States v. Johnson,* 302 F.3d at 150 (quoting *United States v. Santos,* 20 F.3d

280, 285 (7th Cir. 1994)) (internal quotation marks omitted).  Having duly considered this issue,

the Court finds no basis upon which to conclude that an innocent person has been convicted here.

Thus, the interest of justice does not warrant a new trial for Jacobs.

---

[5]  Rule 801 provides in relevant part that:

(d) Statements That Are Not Hearsay.  A statement that meets the following conditions is not hearsay:
    (1) A Declarant-Witness's Prior Statement.  The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
        (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;
        (B) is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
        (C) identifies a person as someone the declarant perceived earlier.
    (2) An Opposing Party's Statement.  The statement is offered against an opposing party and:
        (A) was made by the party in an individual or representative capacity;
        (B) is one the party manifested that it adopted or believed to be true;
        (C) was made by a person whom the party authorized to make a statement on the subject;
        (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
        (E) was made by the party's coconspirator during and in furtherance of the conspiracy.
The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

Fed. R. Evid. 801(d).

ii.     Stephen Garvey - Rule 33 Motion for New Trial

Garvey asserts that he is entitled to a new trial because the verdict is contrary to the evidence, thereby resulting in a miscarriage of justice. (Mem. in Supp. of Mot. for J. of Acquittal and/or New Trial at 11-12.) The Government argues that there was substantial evidence in support of the jury's verdict, and Garvey's motion for new trial should be denied.

For the reasons stated, *infra* Sections A(1) and (2) at pages 12-20, after drawing all reasonable and logical inferences from the evidence presented based on an independent assessment of the Government's case, the Court does not believe that an innocent person has been convicted and finds that no miscarriage of justice has occurred. Accordingly, the Court will deny Garvey's motion for a new trial as to Counts 1 and 4.

iii.    Orlando Carino – Rule 33 Motion for New Trial

Carino asserts that a new trial is warranted to cure the reversible errors committed by the Court when it admitted Agent Semrick's testimony regarding the firearm's operability and other prejudicial evidence linking Carino's firearm to the related charges. (*See* Carino's Mot. for Acquittal and/or New Trial or to Arrest Judgment at 14-15, ECF No. 362.)

For the reasons stated, *infra* Section A(3) at pages 20-24, after drawing all reasonable and logical inferences from the evidence presented, and based on an independent assessment of the Government's case, the Court does not believe that an innocent person has been convicted and finds that no miscarriage of justice has occurred. Therefore, the Court finds no basis upon which to grant a new trial as to Carino.

### C.  <u>Rule 34 Motion to Arrest Judgment – Orlando Carino</u>

Federal Rule of Criminal Procedure 34 ("Rule 34") provides the following two grounds upon which a court shall arrest judgment:  (1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense.  When deciding a Rule 34 motion based on the indictment, "[a] court may not look beyond the face of the 'record' which consists of 'no more than the indictment, the plea, the verdict . . . when the plea is "not guilty" . . . and the sentence. . . .'"  *United States v. Saldana*, Crim. No. 2009-032, 2010 WL 3119967, at *3 (D.V.I. Aug. 4, 2010) (citing *United States v. De Miranda,* No.2008–20, 2008 U.S. Dist. LEXIS 104621, at *3, 2008 WL 5412848 (D.V.I. Dec. 29, 2008) (quoting *United States v. Stolon,* 555 F. Supp. 238, 239 (E.D.N.Y. 1983))); *see also United States v. Diaz,* No. 92–78, 1993 WL 85764 (E.D.Pa. Mar. 25, 1993) ("A Rule 34 motion must be based solely on a defect apparent on the face of the indictment itself, and not on the sufficiency of the evidence adduced at trial.") (citing *United States v. Sisson,* 399 U.S. 267, 280–81, 90 S. Ct. 2117, 26 L.Ed.2d 608 (1970)).

Carino asserts that his Sixth Amendment right to a speedy trial was violated, because the Indictment was not filed within 30 days of his arrest.  Section (b) of the Speedy Trial Act provides that:

> Any **information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges**. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b) (emphasis added). As such, Carino avers that because he was arrested on charges pertaining to the firearm on January 31, 2009, but was not charged with unauthorized possession of a firearm until October 21, 2010, his constitutional right to a speedy trial was violated.

The Government argues that Carino waived his speedy trial claim by failing to move for dismissal on speedy trial grounds prior to trial. Moreover, the Government contends that Carino's claim is without merit, because he was never arrested in connection with the territorial firearm charge. Carino was first arrested on January 31, 2009 for marijuana possession and possession of a firearm in connection with the marijuana--federal offenses. The January 31, 2009 arrest, the Government argues, was voided by his release the same day after he agreed to cooperate. Carino's next arrest, based solely on federal offenses, occurred on March 17, 2010. (*See* Arrest Warrant, ECF No. 7; Indictment, ECF No. 1). As such there was never an arrest for the territorial firearm offense and thus no arrest "in connection with those charges" occurred.

Title 18 U.S.C. § 3162(a)(2) provides that:

If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice. Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

The Supreme Court notes that:

> Instead of granting broad opt-out rights, § 3162(a)(2) serves two unrelated purposes. First, § 3162(a)(2) assigns the role of spotting violations of the Act to defendants--for the obvious reason that they have the greatest incentive to perform this task. Second, by requiring that a defendant move before the trial starts or a guilty plea is entered, § 3162(a)(2) both limits the effects of a dismissal without prejudice (by ensuring that an expensive and time-consuming trial will not be mooted by a late-filed motion under the Act) and prevents undue defense gamesmanship.

*Zedner v. United States*, 547 U.S. 489, 502-03 (2006); *see also United States v. Palma-Ruedas*, 121 F.3d 841, 855 (3d Cir. 1997) (finding no Speedy Trial Act violation where defendant charged with a Section 924 offense 30 days after his arrest on other charges), *overruled on other grounds by United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999). The Court finds that Carino's failure to move for dismissal prior to trial constitutes a waiver of the right to dismissal under Section 3162(a)(2).

Next, Carino asserts that although the Government charged him with federal offenses, this Court dismissed all the federal charges against him with prejudice after the Government presented its case-in-chief, finding insufficient evidence linking Carino to the drug conspiracy. (*See* Trial Tr. Vol. VII at 70, ECF No. 336.) He states that after the federal charges were dismissed, and before the Government's case was submitted to the jury, there were no federal charges pending against him. Carino, therefore, asserts that the Court lacked subject matter jurisdiction to hear the local charge. After dismissal of the federal charge, Carino contends that the District Court should have dismissed the local charge against him without prejudice. Then, the Government of the Virgin Islands could have pursued the local offense in the Superior Court of the Virgin Islands.

As to Carino's claim that this Court lacked subject matter jurisdiction to hear his firearm charge after the federal charges were dismissed, the Government argues that: (1) Carino's argument calls for an arrest of the concept of double jeopardy; (2) Carino ignores this Court's supplemental jurisdiction over the trial of Virgin Islands criminal offenses that grow out of conduct that also offend the criminal law pursuant to 48 U.S.C. § 1612(c); and (3) the facts herein fit squarely within the jurisdictional grant found at Section 1612(c). (*See* Gov't Opp'n to Carino's Mot. for Acquittal/New Trial at 13, ECF No. 372.)

The Revised Organic Act of the Virgin Islands ("Revised Organic Act") provides that:

> The District Court of the Virgin Islands shall have concurrent jurisdiction with the courts of the Virgin Islands established by local law over those offenses against the criminal laws of the Virgin Islands, whether felonies or misdemeanors or both, which are of the same or similar character or part of, or based on, the same act or transaction or two or more acts or transactions connected together or constituting part of a common scheme or plan, if such act or transaction or acts or transactions also constitutes or constitute an offense or offenses against one or more of the statutes over which the District Court of the Virgin Islands has jurisdiction pursuant to subsections (a) and (b) of this section.

Revised Organic Act 22(c); 48 U.S.C. § 1612(c); *see also Defoe v. Phillip* 702 F.3d 735, 738 (3d Cir. 2012) (noting that the Revised Organic Act gave the District Court concurrent jurisdiction over any local crimes that are sufficiently similar to federal crimes) (citing *Callwood v. Enos*, 230 F.3d 627, 631 (3d Cir. 2000) (explaining 48 U.S.C. § 1612(c)). Therefore, although this Court does not exercise independent original jurisdiction over the trial of Virgin Islands criminal offenses, it has supplemental jurisdiction concurrently over those territorial offenses that grow out of conduct that also offends federal criminal law. *See Callwood*, 230 F.3d at 631). Thus, the

Court finds Carino's jurisdictional challenge statutorily and procedurally without merit.

Accordingly, Carino's Rule 34 motion to arrest judgment shall be denied.

### III.    CONCLUSION

For the reasons stated, Defendants Garvey, Jacobs, and Carino's motions for judgment of acquittal, or in the alternative, for a new trial, are denied.  Carino's motion to arrest judgment is also denied.  An appropriate order accompanies this Memorandum Opinion.

**DATE:** June 13, 2013                         **E N T E R:**

/s/ Raymond L. Finch
_____
**RAYMOND L. FINCH**
**SENIOR DISTRICT JUDGE**